**N. H. ROANE, individually and as spokesman for Johnson & Roane, a joint venture, Appellant,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, Appellee.**

**No. 8419.**

United States Court of Appeals
Tenth Circuit.

May 8, 1967.

Donald Church, Tulsa, Okl., for appellant.

David H. Sanders, Tulsa, Okl. (Sanders, McElroy & Whitten, Tulsa, Okl., of counsel, on the brief) for appellee.

Before LEWIS, BREITENSTEIN, and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

In this Miller Act[1] proceeding, appellant Roane attacks a judgment entered against him on the cross-claim of the appellee surety company.

Johnson, who was a party below but is not a party here, and Roane were joint venturers. In that capacity they made a contract with the United States for work on the Keystone Dam project in Oklahoma. The appellee surety executed the performance and payment bonds required by the statute. Defaults occurred and several Miller Act cases were brought and consolidated. These resulted in summary judgments for the use plaintiffs and against the joint venturers and their surety in the amount of $42,418. The surety paid the judgments, and by cross-claim asserted the right to recover this amount plus additional sums for taxes, insurance premiums, and expenses from the joint venturers. It obtained a judgment for $62,112 against appellant Roane and co-venturer Johnson. We are concerned with the validity of that judgment so far as it affects Roane.

Summary judgments were entered for the use plaintiffs. Although these will have to be considered in some detail, matters of general application should be dealt with at the threshold. Appellant says that, in part, the summary judgments are improper because of the existence of genuine issues of material facts. Our examination of the record discloses that the only pertinent issues are between the allegations in the appellant's pleadings and the affidavits submitted in support of the motions for summary judgments. A typical example of this is the appellant's claim that certain of the items for which the use plaintiffs were awarded recovery had as their basis work done by Johnson on a venture of his own under a contract with an agency of the State of Oklahoma.

The appellant's contentions run afoul of Rule 56(e), F.R.Civ.P., which, as amended in 1963, provides that in opposition to a motion for summary judgment an adverse party "may not rest upon the mere allegations or denials of his pleading" but must by affidavit or otherwise "set forth specific facts showing that there is a genuine issue for trial."[2] Neither the pleadings nor the statements made in brief and argument create a fact issue when opposed to positive contrary statements which were made in affidavits submitted in support of the motions for summary judgments. The affiants swore that the items were supplied at the request of Johnson for the Keystone project. Appellant made no response as required by the rule to create a fact issue.

In regard to certain of the claims, appellant says that the notice made necessary by 40 U.S.C. § 270b was not given. In each instance an adequate showing was made that the labor or materials were ordered by Johnson for the Keystone project. The notice is required when the claimant has no contractual relationship with the prime contractor.

---

1. 40 U.S.C. § 270a et seq.

2. This principle was recognized in this circuit before the amendment. See Mc-

Collar v. Euler, 10 Cir., 286 F.2d 327, 328, and General Beverages, Inc., v. Rogers, 10 Cir., 216 F.2d 413, 414.

A Miller Act supplier who deals directly with a prime contractor does not have to give the notice.[3] Here the dealings were directly with one of the joint venturers who held the prime contract.

■ The first Miller Act suit was brought by Butler-Sparks Equipment Company. Thereafter separate suits were brought by Sinclair Refining Co., Boecking-Berry Equipment Co., and Albert & Harlow, Inc. Appellant says that only one suit can be brought and, hence, the district court was without jurisdiction over the three later suits. Although this might have been the law under the Heard Act,[4] it is no longer. The Heard Act has been superseded by the Miller Act which specifically provides[5] that every person furnishing labor and materials has the right to sue on the payment bond. Nothing therein limits to one the number of suits on such bond. The court had jurisdiction of the three mentioned suits and properly consolidated them with the Butler-Sparks case.

■ On the Butler-Sparks claims, appellant says that the labor, parts, and materials were furnished at the instance of the owner of rented equipment and concludes that the joint venture is not responsible. An uncontroverted affidavit shows that the labor and materials were furnished at the request of Johnson for the Keystone project.

■ The claim of Communications Engineering Company covers the installation, rental and maintenance of two mobile radio units. Appellant says that these were capital equipment not consumed in the prosecution of the work and not a proper charge against the bond.[6] A rental charge for equipment used in a public work project within the purview of the Miller Act is not a capital expense.

The affidavit supporting the claim is sufficient.

■ Pate and Morris Construction Company furnished to the project two tractors with operators and presented a claim for the rental and the operators' wages. The argument that these wages are not a proper charge is farfetched. The showing is that the operators worked on the project at the instance of the joint venture. Liability may not be avoided on the ground that Pate and Morris actually paid them.

■ The claim of Conley-Lott-Nichols Machinery Company is for rental and repairs on two crawler tractors under contracts between Johnson and Nichols Machinery Company. An adequate showing is made that Conley-Lott-Nichols succeeded to the interest of Nichols and that the claim was in accordance with the rental contracts. The objection of the appellant is that at the time of the execution of the rental contracts the parties also entered into option-to-purchase agreements. He relies on United Pacific Insurance Company v. United States ex rel. Mississippi Val. Equipment Co., 8 Cir., 296 F.2d 160, which reversed a summary judgment granted to a lessor under a rental agreement which contained an option to purchase. The court there said that "the measure of the surety's liability is the actual rent to be paid on the equipment used on the job" and that "the agreed rentals as recited in the agreement were disproportionately high and did not represent a fair and actual rent because such so-called rentals would have exceeded the agreed value of the equipment in less than one year." Id. at 164. The facts here are different. Substantial amounts remained to be paid on the purchase price at the end of the lease period. In addition, the affidavit of an

---

3. Continental Casualty Company v. United States, 8 Cir., 305 F.2d 794, 797, cert. denied sub nom. United States for Use and Benefit of Robertson Lumber Co. v. Continental Casualty Co., 371 U.S. 922, 83 S.Ct. 290, 9 L.Ed.2d 231.

4. Act of August 13, 1894, ch. 280, 28 Stat. 278, as amended by the Act of February 24, 1905, ch. 778, 33 Stat. 811.

5. 40 U.S.C. § 270b(a).

6. See United States for Use and Benefit of J. P. Byrne & Co. v. Fire Association of Philadelphia, 2 Cir., 260 F.2d 541, 544.

official of the lessor states that: "The monthly rentals provided for in such Lease Agreements were the usual, customary and prevailing rentals for similar equipment in the States of Oklahoma and Texas at the time such rental agreements were executed." Appellant made no effort to contravene this statement. In our opinion, the United Pacific decision does not apply and the entry of summary judgment in favor of Conley-Lott-Nichols was proper.

■■ We conclude that all the summary judgments in favor of the use plaintiffs were valid. The surety paid them and under its indemnity agreement could recoup from appellant and Johnson. The fact that those two had their own agreement which divided the work and liability between them makes no difference so far as the rights of the surety are concerned. Appellant admits that he and Johnson as joint venturers made the prime contract with the United States and obtained the bonds from the surety. In Oklahoma, the law of partnership applies to controversies between joint venturers and third persons,[7] and the property of any member of the joint venture is liable to satisfy a judgment against the venture.[8] No claim is made that, at the time of the execution of the bonds, the surety had notice of the private arrangements between appellant and Johnson. In the absence of notice it is not bound thereby. No question is raised over the validity and effect of the indemnity agreement. The surety may recover from Roane the amounts paid to satisfy the judgments for the use plaintiffs.

■ Additional recovery for taxes, insurance premiums, and expenses was proper. Substantial and uncontroverted evidence sustains the findings of the trial court that the amounts allowed were due from the joint venture and unpaid.

■ Counsel for appellant suggests in brief and argument that property of

Johnson is available for at least partial satisfaction of the judgment for the surety and that appellant and the surety are engaged in litigation in the Oklahoma state courts over rights to such property. All of this is beside the point. We are concerned with the liability of appellant—not with the amount of money he may ultimately have to pay without recoupment from Johnson. The controversy which appellant and the surety are having in state court is no concern of ours and furnishes no reason for overthrowing the judgment which has been entered.

Affirmed.

7. Commercial Lumber Co. v. Nelson, 181 Okl. 122, 72 P.2d 829, 830.

8. 54 O.S.A. § 40, 1966. See also Adamson v. Brady, 199 Okl. 55, 182 P.2d 748, 750; and W. B. Johnston Grain Company v. Self, (Okl.) 344 P.2d 653, 658.